# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| ZONA MARIE KELLEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-17-512-SM |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Zona Marie Kelley (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 12, 13.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

I. **Administrative determination.**

A. **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B. **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

C. **Relevant findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 19-26;

*see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, first, by dysfunction of major joints, second, by obesity, third, by an affective disorder, fourth, by a pain disorder with both psychological factors and a general medical condition, fifth, by hypertension, sixth, by right thigh pain/meralgia paresthetica, and seventh, by knee pain;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity (RFC)[2] to perform sedentary work, with some limitations;

(4) could perform her past relevant work as a telephone operator; so, she

(5) had not been under a disability, as defined in the Social Security Act, from January 1, 2012 through February 12, 2016. [3]

AR 21-26.

### D. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review the ALJ's decision. *Id.* at 1-5. So, the ALJ's decision is the

---

[2]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

[3]  Plaintiff's amended onset date appears to have been June 3, 2013, but the ALJ did not clearly accept that date. AR 35-36.

Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's

4

decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

### B. Plaintiff's claims of error.

Plaintiff argues (1) the ALJ's conclusion "Plaintiff has the [RFC] to perform past relevant work is not based on substantial evidence," and (2) "[t]he ALJ failed to properly evaluate Plaintiff's credibility and his findings are not supported by substantial evidence." Doc. 16, at 8, 16.

### C. Analysis.

#### 1. Step-three challenge.

Though titled as a challenge to the ALJ's past-relevant-work determination, Plaintiff appears to challenge the ALJ's conclusion that her impairments "did not meet or equal any listing of impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.* at 10 (quoting AR 21). Rather than attack the RFC, she challenges the ALJ's conclusion she was not disabled under Listing 1.02 because he did not consider whether Plaintiff could ambulate effectively. *Id.* at 10-16. She lists various medical reports involving

5

her left knee, including a diagnosis of osteoarthritis, notations of her reduced mobility and need for a cane in March 2014. She also argues that twice in 2015, her physician recommended arthroplasty (which could not be performed due to her obesity and her lack of insurance). *Id.* at 11-12. Plaintiff challenges the ALJ's "finding that her knee condition did not meet the severity requirements of Listing 1.02A 'due to the absence of evidence of the inability to ambulate effectively,' [which] indicates that the ALJ improperly discounted the claimant's credibility in describing her limitations." *Id.* at 15-16 (quoting AR 22).

The ALJ noted Plaintiff had "not been prescribed a cane, or a chair, and [that she] was apparently advised that unless [she] lost weight, they would not perform the knee surgery." AR 37. The ALJ also noted Plaintiff's testimony "she uses a motorized wheelchair to get around." *Id.* at 24, *see* Doc. 18, at 1.

At step three of the sequential evaluation process, the ALJ compares a claimant's impairment to the Listings (20 C.F.R. Pt. 404, Subpt. P, App. 1). *See Lax*, 489 F.3d at 1085. If the impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. *Sullivan v. Zebley*, 498 U.S. 521, 530-31 (1990). Plaintiff has the burden of proving that a Listing has been equaled or met. *Bowen v. Yuckert*, 482 U.S. at 140-42 (1987); *Williams v. Bowen*, 844 F.2d at 750-51 (10th Cir.1988). To be found disabled

6

based on the Appendix 1 Listing of Impairments, Plaintiff must show that her condition satisfies all of the specified medical criteria of a particular Listing. *Sullivan*, 493 U.S. at 530 (impairment does not meet Listing if it has only "some of" the medical criteria, "no matter how severe[]").

> Listing 1.02 provides:
>
> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
>> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02A.

Listing 1.00B2b defines the "inability to ambulate effectively." *Id.* In relevant part, Listing 1.00B2b provides:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that *limits the functioning of both upper extremities* . . . .

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, *but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. . . .*

*Id.* at Listing 1.00B2b(1)-(2) (emphases added).

"The Listing of Impairments . . . describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an [adult] from doing any gainful activity. . . ." 20 C.F.R. §§ 404.1525(a), 416.925(a). It is Plaintiff's "step three burden to present evidence establishing her impairments meet or equal listed impairments. . . ." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The failure to make findings at Step Three requires remand only where the ALJ does not adequately supply her reasoning elsewhere in her decision. *Id.* at 734 (remand not required "for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review").

8

At the hearing, Plaintiff argued "she does have a significant degeneration of a major weight-bearing joint that significantly impacts her ability to function on a daily basis. She has difficulty with standing and walking, and she has a severe pain syndrome." AR 36. The ALJ discussed Plaintiff's limited ambulation, and also observed she drives, shops, handles money, and attends church. *Id.* at 37. He inquired as to how Plaintiff's weight-loss plan was progressing, recognizing she must lose weight before having surgery. *Id.*

Plaintiff responded that although she is trying her "best" to lose weight, she performs no "cardio" or exercise, noting she can neither sit, stand, nor walk "for long periods of time." *Id.* at 40. Plaintiff testified her knee pain is "off the charts," "throbbing like someone is stabbing me right in the kneecap," she does only limited household chores with "a lot of breaks," can only wash dishes while sitting, can grocery shop with a motorized chair, visits friends two-to-three times a week, sits with her legs propped up, and has gained about fifty pounds over the past three or four years. *Id.* at 43-45, 48. The ALJ asked which was worse, losing the weight and having the surgery or not having the surgery, and Plaintiff responded "Well, it's six and one half in a dozen . . . ." *Id.* at 39.

The ALJ found severe impairments included dysfunction of major joints and knee pain, and limited her to sedentary work. *Id.* at 21, 23. Plaintiff

9

makes no effort to show how her impairments create the limitation of the use of both *upper* extremities, which the listing requires. The ALJ understood the recommended surgery and Plaintiff's obesity complication. As the Commissioner argues, even if Plaintiff's obesity significantly impacts her knee functioning, she still cannot satisfy each of the requirements of Listing 1.02. Doc. 17, at 7; *see Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). The ALJ's discussion of the evidence under the Listing 1.02 and analysis, albeit terse, satisfied the ALJ's legal obligation to make specific findings. Finally, even if the ALJ technically erred, the ALJ's comprehensive discussion of the medical evidence throughout the decision is sufficient. *See Fischer-Ross*, 431 F.3d at 733 (10th Cir. 2005); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Plaintiff lastly argues the ALJ's conclusion her knee conditions did not meet the severity requirements "due to the absence of evidence of the inability to ambulate effectively" reflects an inappropriate evaluation of Plaintiff's credibility. *See* Doc. 16, at 15-16. The court next turns to that issue.

### 2. Substantial evidence supports the ALJ's credibility determination.

In reviewing an ALJ's credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of HHS*, 933 F.2d 799, 801 (10th Cir. 1991). "Credibility is the province of the ALJ." *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). So long as she sets forth the specific evidence on which she relies in evaluating claimant's credibility, the ALJ is not required to conduct a formalistic factor-by-factor recitation of the evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001); *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). In making a finding about credibility, the ALJ need not totally accept or totally reject the individual's statements. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).[4]

---

[4] On March 16, 2016 (after the Commissioner's decision became final), SSR 16-3p superseded SSR 96-7p. The new ruling "eliminat[es] the use of the

11

The Tenth Circuit has set forth the framework for analyzing evidence of subjective symptoms. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain). The relevant factors are (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based upon all objective and subjective evidence. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

In the final step, the ALJ should consider the following factors: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston*, 838 at 1132;

---

term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." 2016 WL 1119029, at *1. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007). The new Ruling, however, does not appear to be a policy change but, rather, a clarification.

see 20 C.F.R. §§ 404.1529(a) ("In determining whether you are disabled, we consider all of your symptoms, include pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); 416.929(a) (same); *see also* SSR 16-3p, 2016 WL 1119029, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and other evidence.").

> In discounting Plaintiff's credibility, the ALJ stated:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In support of the foregoing finding regarding the claimant's credibility, the undersigned notes in Function Reports-Adult, the claimant described daily activities including caring for her aging parents, including driving them; cooking; laundry; doing dishes; driving a car; shopping in stores; paying bills; handling a savings account; using a checkbook/money orders; playing an1es; and attending church. She stated she had no limitations on understanding, following instructions, and getting along with others. The claimant stated she was able to get along with authority figures and had never been fired or laid off from a job because of problems getting along with other people (Exhibits 5E and 9E).
>
> Moreover, in a Function Report-Adult-Third Party, Beverly Phillips, the claimant's sister, stated the claimant's daily activities included caring for her aging parents, with whom she

13

> lives; preparing meals; laundry; dishes; driving a car; shopping in stores; paying hills; handling a savings account; playing games; and attending church. She indicated the claimant had no limitations on memory, understanding, following instructions; and getting along with others.
>
> She stated the claimant followed written instructions "fairly well." She stated the claimant had a "good" ability to get along with authority figures and had never been fired or laid off from a job because of problems getting along with other people (Exhibit 4E).

AR 24-25.

The above findings, his consideration of the "entire record," in addition to his careful questioning of Plaintiff at the hearing regarding her knee pain, her obesity, and her activities, provide substantial evidence supporting the ALJ's credibility determination. *See also Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (explaining "[w]here, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word") (citation and internal alterations omitted)). Plaintiff fails to demonstrate reversible error.

### III. Conclusion.

The court affirms the Commissioner's decision.

ENTERED this 1st day of December, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE